# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) CHRISTOPHER SMOAK, an individual
 residing in California,

                Plaintiff,

    vs.

(1) BITCOIN MARKET, LLC, an Oklahoma
limited liability company; (2) DUSTIN W.
DOLLAR, an individual residing in Oklahoma;

              Defendants.

Case No.   **CIV-18-1096-G**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Christopher Smoak ("Smoak" or "Plaintiff"), for his Complaint against Defendants Bitcoin Market, LLC ("BMLLC" or "Bitcoin Market") and Dustin W. Dollar ("Dollar") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This action seeks redress for defendants' breach of contract related to Plaintiff's investment in bitcoins and use of the Bitcoin Market service/platform, including the website which was located at bitcoinmarket.com.  Defendant BMLLC was an online bitcoin exchange owned and operated by Dollar which invited customers to trade in bitcoins.  Defendants' business is now defunct and they have kept all of Plaintiff's investment, which is currently valued at over US$500,000.

## THE PARTIES

2.     Smoak is an individual residing in San Francisco, California.  Smoak is a serial entrepreneur with a Bachelor of Science degree in computer science from Carnegie Mellon University.

3.     Smoak is informed and believes that defendant BMLLC was a limited liability company based in Oklahoma and offered a mechanism for investing in bitcoins. BMLLC was a bitcoin exchange, a digital marketplace where traders could buy and sell bitcoins using different fiat currencies or altcoins - an online platform that acted as an intermediary between buyers and sellers of the cryptocurrency. The online platform consisted of several parts, including at least a website and email service to communicate with customers, an account to hold bitcoin and cash for customers, and an escrow service to hold bitcoin for pending trades.

4.     Smoak is informed and believes, and thereon alleges, that defendant Dollar was the founder, owner and manager of BMLLC.

5.     Smoak is informed and believes, and on that basis alleges, that except where otherwise explicitly alleged, each of the defendants is, and at all relevant times herein mentioned was, the agent, partner, joint venturer, employee, alter ego, and/or

conspirator of the remaining defendants, and is, and at all relevant times herein mentioned was, in performing and failing to perform the acts and conduct hereinafter alleged, acting within the course and scope of such agency, partnership, joint venture, employment, and/or conspiracy.  Smoak is further informed and believes, and on that basis alleges, that the acts and conduct of each of the defendants were known to, and authorized and ratified by, the remaining defendants, and that each of the defendants is legally responsible for the conduct and damages herein alleged.

6.     Smoak is further informed and believes, and on that basis alleges, that at all times mentioned herein there existed and now exists a unity of interest and ownership between Dollar and the corporate defendant, such that any individuality and separateness between them has ceased and that Defendant BMLLC is the alter ego of the Dollar in that, on information and belief, at all times material hereto:  (a) Defendant Dollar was the founder, majority owner, majority and/or controlling member, officer and/or director and/or principal of BMLLC; (b) Defendant Dollar effectively made all of the important business decisions regarding the activities of BMLLC; (c) Defendant Dollar and/or the other members, officers and/or directors and/or principals of BMLLC at the direction of Defendant Dollar, ignored the corporate formalities for BMLLC; (d) Defendant Dollar comingled the funds and assets of BMLLC with his own; (e) Defendant Dollar and BMLLC occupied and operated out of the same address; and (f) Defendant Dollar used BMLLC funds to purchase goods and/or services for his own account and/or engaged in other financial transactions with BMLLC funds for his own benefit and to the detriment of BMLLC creditors.

7.     Adherence to the fiction of the separate existence of BMLLC, as distinct from Defendant Dollar, would permit an abuse of the corporate form and would promote an injustice in that, on information and belief (a) BMLLC was undercapitalized for the business in which it were engaged; and (b) Defendant Dollar manipulated the assets of BMLLC to the detriment of creditors, *inter alia*, transferring the assets of BMLLC to

himself rather than paying the debts that BMLLC owes to Plaintiff and other creditors.

## JURISDICTION AND VENUE

8.     Plaintiff Smoak is a citizen of the State of California and defendant BMLLC is a limited liability company incorporated under the laws of the State of Oklahoma having its principal place of business in a State other than the State of California.  On information and belief, Defendant Dollar is a citizen of the State of Oklahoma.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because at least one of the Defendants resides within this District.

## FACTUAL ALLEGATIONS

10.     Bitcoin is a cryptocurrency, a form of electronic cash.  It is a decentralized digital currency, without a central bank or single administrator, that can be sent from user-to-user on the peer-to-peer bitcoin network without the need for intermediaries.

11.     Transactions are verified by network nodes through cryptography and recorded in a public distributed ledger called a blockchain.  Bitcoin was invented by an unknown person or group of people using the name Satoshi Nakamoto and released as open-source software in 2009.  Bitcoins are created as a reward for a process known as mining.  They can be exchanged for other currencies, products, and services.  Research produced by the University of Cambridge estimates that in 2017, there were 2.9 to 5.8 million unique users using a cryptocurrency wallet, most of them using bitcoin.

12.     The price of bitcoins has gone through cycles of appreciation and depreciation referred to by some as bubbles and busts.  In 2011, the value of one bitcoin rapidly rose from about US$0.30 to US$32 before returning to US$2.  In the latter half of 2012 and during the 2012–13 Cypriot financial crisis, the bitcoin price began to rise, reaching a high of US$266 on April 10, 2013, before crashing to around US$50.  On

November 29, 2013, the cost of one bitcoin rose to a peak of US$1,242.  In 2014, the price fell sharply, and as of April remained depressed at little more than half 2013 prices. As of August 2014, it was under US$600.

13.     In or about 2011, Smoak decided to make an investment in bitcoins.  There are several on-line bitcoin exchanges offering means to make such an investment.  One was BMLLC.

14.     BMLLC was a bitcoin exchange, a digital marketplace where traders could buy and sell bitcoins using different fiat currencies or altcoins - an online platform that acted as an intermediary and/or escrow agent between buyers and sellers of the cryptocurrency.

15.     To transact in bitcoin on an exchange, a user has to register with the exchange and go through a series of verification processes to authenticate his or her identity.  Once the authentication is successful, an account is opened for the user who then has to transfer funds into this account before s/he can buy coins.  Different exchanges have different payment methods that can be used for depositing funds including bank wires, direct bank transfers, credit or debit cards, bank drafts, money orders, and even gift cards.  A trader who would like to withdraw money from his or her account could do so using the options provided by his exchange which could include a bank transfer, PayPal transfer, check mailing, cash delivery, bank wire, or credit card transfer.

16.     On May 26, 2011, Smoak opened an account with BMLLC and on or about that date sent Dollar a check for $1,000 to trade in bitcoins to be held in that account.

17.     On June 2, 2011, Smoak coordinated trades via Bitcoin Market, which then held the seventy-five (75) bitcoins he now owned.  On that same date, BMLLC confirmed receipt of the money via email and confirmed that Defendants "will credit your account soon."

18.     In March 2013, Smoak attempted to log into his account with BMLLC but was unable to do so.  On April 8, 2013, he sent an email to Dollar advising him of this fact and requesting access to his account.

19.     On November 9, 2013, Smoak sent Defendants another email; however, he received a notification that the recipient, support@bitcoinmarket.com, was not receiving email. Smoak attempted to contact Dollar via bitcoinmarket@gmail.com and dustin.dollar@gmail.com as well, but was unsuccessful.

20.     Defendants never responded to Smoak's email nor to any follow up communications.

21.     As of November 7, 2018, a single bitcoin is valued at US$6,509.98 and Smoak's 75 bitcoin have a value of US$488,248.50.

22.     In 2017, a modification to bitcoin resulted in a new currency based on the original called bitcoin cash ("BCH").  Access to a certain amount of bitcoin before August 1, 2017 provided automatic access to a corresponding amount of BCH, which is valued at US$618.04 as of November 7, 2018, meaning Smoak has an additional US$46,353.00 in losses from not having access to the 75 bitcoins.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)
### (Against All Defendants)

23.     Smoak realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

24.     In or about May 2011, Smoak entered into a written contract with BMLLC pursuant to which BMLLC agreed to facilitate online bitcoin transactions on behalf of Smoak and to hold such bitcoins and cash in trust on behalf of Smoak in exchange for fees and commissions charged by BMLLC to Smoak.

25.     In or about June 2011, Smoak deposited $1,000 in his account with BMLLC which amount was to be exchanged for bitcoins.  In addition, and shortly

thereafter, Smoak purchased seventy-five (75) bitcoins which were held in trust by Bitcoin Market and deposited into Smoak's account on Bitcoin Market.

26.     In breach of their agreement, BMLLC has refused Smoak access to his account and has failed and/or refused to return to him the property deposited in his account.

27.     Smoak has performed all obligations under the agreement with BMLLC except those which have been excused by BMLLC's breach.

28.     As a result of Defendants' breach, Plaintiff has suffered significant injury, including compensatory and consequential damages, in an amount to be proven at trial but in excess of $75,000, for which Defendants are liable.

29.     On information and belief, the agreement between Smoak and BMLLC contains an attorneys' fees provision providing that in any dispute between the parties arising from their relationship, the losing party must pay the prevailing party his reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Smoak prays for judgment against Defendants as follows:

1.     For general damages, compensatory damages and consequential damages according to proof at trial but no less than the sum of $75,000;

2.     For punitive and exemplary damages according to proof;

3.     For attorneys' fees according to proof at trial;

4.     For costs of suit and pre-judgment and post-judgment interest, as provided under applicable law according to proof; and

5.     For such other, further, and/or different relief, in law or equity, as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Smoak hereby demands a trial by jury on each of his claims for relief that are triable before a jury.

Respectfully submitted,

Dated:  November 7, 2018

*/s/ Michael O'Neal*
MICHAEL O'NEAL, OBA #20298
Williams, Box, Forshee & Bullard
522 Colcord Drive
Oklahoma City, Oklahoma 73102
(405) 232-0080 (Phone)
(405) 236-5814 (Fax)
moneal@wbfblaw.com

Michael W. Stebbins, CA Bar #138326
*Application for Admission Pro Hac Vice*
*to be submitted*
mws@svlg.com
Marc G. Van Niekerk, CA Bar #201329
*Application for Admission Pro Hac Vice*
*to be submitted*
*mvn@svlg.com*
SILICON VALLEY LAW GROUP
1 N. Market Street, Suite 200
San Jose, CA 95113
Telephone:  (408) 573-5700
Facsimile:   (408) 573-5701

*Attorneys for Plaintiff*
*CHRIS SMOAK*